UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America ) | |
| ) | Case No. 03 CR 90-8 |
| v. ) | |
| ) | Hon. Steven C. Seeger |
| Harold Crowder, a/k/a "H-Man" ) | |
| ) | |
| _____) | |

## MEMORANDUM OPINION AND ORDER

Defendant Harold Crowder seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) based on concerns surrounding the COVID-19 pandemic. The government opposed Crowder's pro se motion, arguing that Crowder had failed to exhaust his administrative remedies and that reducing his sentence would be inconsistent with the sentencing factors in 18 U.S.C. § 3553(a). The Court finds that Crowder failed to satisfy the exhaustion requirement, so the motion for compassionate release is denied.

### Background

Crowder's conviction stems from his involvement in a street gang called the Insane Deuces. The Seventh Circuit provided background about the gang and Crowder's involvement in *United States v. Morales*, 655 F.3d 608 (7th Cir. 2011). The Seventh Circuit highlighted Crowder's role as a "shooter":

> Crowder held privileges in the Aurora Deuces, though he had not come up in the gang. He was a defector from the Gangster Disciples and had come to the Deuces in late 2001 to serve as a shooter on gang missions. He fulfilled – indeed, exceeded – that role, attempting to murder rival gang members and shooting individuals he erroneously believed to be Latin Kings.

*Id.* at 618. At trial, the government argued that Crowder shot his victims in furtherance of the Insane Deuces's racketeering conspiracy, and a jury convicted Crowder of that crime in 2008. *See* Dckt. No. 1189.

On September 23, 2009, Judge Leinenweber sentenced Crowder to a prison term of 14 years and 9 months, followed by a five-year term of supervised release. *See* Judgment (Dckt. No. 1713). At the sentencing hearing, Judge Leinenweber made clear that he sought to impose the maximum 20-year sentence, given the seriousness of Crowder's crimes. *See* 9/23/09 Tr., at 35–38 (Dckt. No. 1777) ("I believe that it is necessary to impose a maximum sentence, in this particular case, to reflect the seriousness of the offense, and to provide just punishment."). At that point, Crowder had already been incarcerated for five years and three months on state charges of aggravated discharge of a firearm. So Crowder's sentence was entered as 14 years and 9 months (for a total imprisonment of 20 years). *Id.* The Seventh Circuit affirmed that sentence. *See Morales*, 655 F.3d at 620–23, 628–29, 644.

Crowder served the majority of his sentence at USP Canaan in Waymart, Pennsylvania. He is eligible for release later this year. *See* Government's Resp. to Def.'s Mtn. for Compassionate Release, at 7 (Dckt. No. 1955). Crowder recently transitioned to the Residential Reentry Management (RRM) field office in Downers Grove, Illinois. *See* Federal Bureau of Prisons, *Find an Inmate*, www.bop.gov/inmateloc (enter BOP Register Number 18236-424). The BOP website shows a release date of August 18, 2021. *Id.*

## Analysis

Under the First Step Act, Congress gave district courts the discretion to reduce a defendant's sentence in certain limited circumstances. *See* 18 U.S.C. § 3582(c)(1)(A). An

inmate must satisfy a procedural component (*i.e.*, the exhaustion of administrative remedies) and a substantive component (*i.e.*, specific reasons for a reduced sentence).

The first hurdle is an exhaustion requirement. A defendant must show that he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or that 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*. An inmate must go to the BOP first, and go to the federal courthouse second.

If a defendant satisfies the exhaustion requirement, a district court can consider the merits of a motion for compassionate release. A court may shorten a sentence "after considering the factors set forth in section 3553(a)," but only "if it finds" that "extraordinary and compelling reasons warrant such a reduction." *Id.*; *see also United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii) [*i.e.,* senior inmates].").

The statute also contemplates a finding that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(1)(A)(i). But the existing policy statements are not "applicable" when the defendant (as opposed to the Bureau of Prisons) moves for compassionate release. *See Gunn*, 980 F.3d at 1180; *United States v. Saunders*, 2021 WL 420317, at *2 (7th Cir. 2021).

The government objects to Crowder's motion for compassionate release on both procedural and substantive grounds. *See generally* Government's Resp. to Def.'s Mtn. for Compassionate Release (Dckt. No. 1955). First, the government argues that Crowder has not fully exhausted his administrative remedies, as required by the statute. *Id.* at 16–19. Second,

while acknowledging that Crowder's obesity constitutes "an extraordinary and compelling reason for release" in light of the COVID-19 pandemic, the government argues that the § 3553(a) factors weigh against release. *Id*. at 22–26.

"Failure to exhaust administrative remedies is an affirmative defense[.]" *Gunn*, 980 F.3d at 1179. The government has the burden to support its affirmative defense. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). But when the government properly invokes the exhaustion defense, dismissal is mandatory, and a district court has no discretion to grant compassionate release. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

Here, the government represents that "the BOP facility where Crowder [was] detained has no record of him submitting a request for compassionate release[.]" *See* Government's Resp. to Def.'s Mtn. for Compassionate Release, at 17 (Dckt. No. 1955).[1] The government filed that response on July 20, 2020. *Id.*

In response, Crowder argues that he satisfied the exhaustion requirement. But he doesn't argue that he submitted a request for compassionate release to the BOP *before* filing his motion. Instead, he points to a request for compassionate release that he apparently submitted months later. (But even then, he failed to give this Court a copy.)

Specifically, Crowder relies on a response that he received from the prison on August 27, 2020. *See* Inmate Request to Staff Response (Dckt. No. 1985, at 5 of 7). The Staff Response establishes that Crowder did, in fact, make a request for compassionate release. *Id.* ("This is in

---

[1] In its response, the government stated that it "confirmed" that there is no record at USP Canaan of Crowder making a request for compassionate release, but it doesn't reveal how it reached that conclusion. Crowder disagrees, *see* Crowder Reply, at 1 (Dckt. No. 1985), but he points only to the letter from the warden dated August 27, 2020 (discussed in greater detail, *infra*) as evidence of exhaustion. Crowder has not come forward with a copy of any request to the BOP for compassionate release that pre-dated his motion.

4

response to your Request for a Compassionate Release, which was received on *August 24, 2020*.") (emphasis added).

There are two major problems. First, Crowder moved for compassionate release in this Court on May 20, 2020. *See* 5/20/20 Mtn. (Dckt. No. 1936). According to his own filing, he didn't ask the BOP for compassionate release until August 24, 2020, about three months later. *See* Inmate Request to Staff Response (Dckt. No. 1985, at 5 of 7). So he filed a motion for compassionate release in federal court around Memorial Day, and then asked the BOP for compassionate release around Labor Day.

That order is backwards. The statute requires an inmate to submit a request for compassionate release to the Bureau of Prisons first. A defendant can move for compassionate release in federal court "after" – not before – asking the BOP for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). The statutory text leaves no wiggle room. A district court "*may not*" modify a sentence based on a defendant's motion until "*after* the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added).

Crowder did not ask the Bureau of Prisons for compassionate release before asking this Court for compassionate release. So, under the plain language of the statute, this Court "may not" reduce his sentence. *See* 18 U.S.C. § 3582(c); *see also Sanford*, 986 F.3d at 782 ("The statute plainly uses mandatory language . . . . This is the language of 'a paradigmatic mandatory claim-processing rule.'") (quoting *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020)); *United States v. Williams*, 829 F. App'x. 138, 140 (7th Cir. 2020) ("This exhaustion requirement is a mandatory claim-processing rule."); *see also Hamer v. Neighborhood Hous. Servs. of*

*Chicago*, 138 S. Ct. 13, 17 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced . . . ."). Simply put, a failure to "comply with the statute's exhaustion requirement" requires "denial of his motion for compassionate release." *Sanford*, 986 F.3d at 782.

Second, the motion seeks compassionate release for a reason that is different than the reason that he gave to the Bureau of Prisons. The motion requested compassionate release because of the pandemic. *See* 5/20/20 Mtn., at 3–4 (Dckt. No. 1936, at 6–7 of 20). "Crowder fears that he may contract this deadly virus which can result in death if he remains incarcerated." *Id.* at 4.

But Crowder never asked the Bureau of Prisons to release him in light of the pandemic. In his request to the BOP (again, which he submitted three months after filing the motion), he apparently didn't mention the pandemic at all.[2] Instead, he sought release because of the death of his son. The BOP responded to a request for compassionate release based on his son's passing, not based on health risks from the coronavirus.[3]

The statute does not merely require exhaustion. It requires *issue* exhaustion. A prisoner cannot ask the Bureau of Prisons for compassionate release on one ground, and then ask a district court for compassionate release on some other ground. Instead, the inmate must "present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court," because "any contrary approach would undermine the purpose of exhaustion." *United States v. Williams*, 2021 WL 486885, at *2 (7th Cir. 2021). From an exhaustion standpoint, there is no such thing as in for a penny, in for a pound.

---

[2] The Court adds "apparently" because Crowder did not file a copy of his request to the BOP. The BOP's response addressed the death of his son (only), so the Court infers that he requested release for that reason. Crowder never argues that he asked the BOP for compassionate release based on the pandemic.
[3] In his motion, Crowder does mention the death of his son in passing. But he doesn't argue that he needs to be released because his son passed away. So the reason that he gave to the BOP for compassionate release (the death of his son) is different than the reason that he gave to this Court (the pandemic).

6

Crowder did not ask the BOP to release him based on the pandemic. So he cannot offer that reason as a basis for seeking compassionate release in his motion.

Crowder failed to satisfy the exhaustion requirement, so his motion for compassionate release is denied. In light of his failure to exhaust, there is no need to reach the merits of his request. *See United States v. Williams*, 829 F. App'x. 138, 140 (7th Cir. 2020) ("The district court correctly denied compassionate release for Williams based on his failure to present proof that he had satisfied § 3582(c)(1)(A)'s exhaustion requirement."); *see also United States v. Franco*, 973 F.3d 465, 468–70 (5th Cir. 2020); *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (holding that a failure to satisfy the exhaustion requirement is a "glaring roadblock" foreclosing compassionate release).

## Conclusion

For the foregoing reasons, the motion for compassionate release is denied.

Date: February 23, 2021

Steven C. Seeger
United States District Judge